**SIGNED THIS: March 27, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RENELL CHRISTINE GAMBLE, | ) | No. 07-82078 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| RENELL CHRISTINE GAMBLE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-8120 |
| | ) | |
| VANDERBILT UNIVERSITY, | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court for consideration of the cross-motions for summary judgment filed by the Plaintiff, Renell Christine Gamble (the "DEBTOR"), and by the Defendant, Vanderbilt University (VANDERBILT), on the complaint filed by the DEBTOR, seeking a determination that her debt to VANDERBILT does not constitute a nondischarge-

able debt under Section 523(a)(8) of the Bankruptcy Code.[1]  At issue is whether the debt qualifies as a "loan" under that provision.

The DEBTOR attended VANDERBILT, starting in 1998.  On May 29, 1998, the DEBTOR executed a document captioned "Vanderbilt Card Selections for Freshman and Student Account Guarantor Agreement 1998-1999" (the "Agreement").  A student who enters into the Agreement is provided with a debit card called the "Vanderbilt Card" that may be used at various specified on-campus and off-campus locations. The Agreement sets forth three types of selections: an optional flexible spending account, an optional campus dining account and a dinner plan.  The student selects a dollar amount for the first two accounts and that amount is loaded onto the Vanderbilt Card at the beginning of each semester and charged to the cardholder's student account.  Unlike the optional accounts, participation in the dinner plan is required of all first year students living in the freshman residence halls and no selection is necessary.  The last paragraph of the first page, headed "Student Account Guarantor Agreement," provides:

> By signing below, Student and Guarantors indicate that they accept responsibility for payment of the charges for educational services which from time to time may be purchased from [VANDERBILT,] subject to the Terms and Conditions described on the back of this page, and which may include tuition, room, campus dining account, flexible spending account, dinner plan, V-Net (long distance services), activity and recreation fees, library charges, traffic fines and other University charges during Student's enrollment at [VANDERBILT.]  Also, the student hereby grants consent for [VANDERBILT] to disclose to the Guarantor(s) all information related to the Student's Account for the purpose of informing Guarantor(s) about the Account and the unpaid Account balance.

---

[1] Because one or more of the exhibits to the motion contained personal information concerning the DEBTOR, VANDERBILT filed an amended motion correcting the error.

The Agreement is signed by the DEBTOR and by Annette Gamble, as guarantor. A second page, captioned "Terms and Conditions," includes the following provisions:

1. Student will be billed on the first business day of each month, except September and January, for all unpaid charges on the Account. Bills will be sent to the address last reported to [VANDERBILT.] Any balance not paid by the end of the calendar month in which the bill was issued will be assessed a late fee of one and one-half (1.5%) percent per month.

2. Tuition and other charges must be paid one week prior to the first day of classes for fall and spring semesters (August 1 and December 1 invoices). Other incidental charges occurring after the beginning of the semester are due and payable as described in Item #1.

3. All unpaid balances including late fees shall be due not later than November 30th for fall semester charges, April 30th for spring semester charges, and July 31st for May and summer session charges as a condition for financial clearance to enroll in classes subsequent to sessions.

   * * *

5. Vanderbilt University reserves the right to refuse to apply further charges to Student's Account and further reserves the right to condition Student's enrollment upon payment in full of the Account.

The Student Account at VANDERBILT is an open account to which charges are debited and payments are credited.[2] As of October 29, 1999, the DEBTOR had a credit balance in her Student Account of $2,582.87. Between December 1, 1999 and June 1, 2000, the following amounts were debited to the Account:

| | |
|---|---|
| TUITION | $11,495.00 |
| HOUSING | 2,675.00 |
| FLEXIBLE SPENDING ACCT. | 500.00 |
| ACTIVITY & REC. FEES | 303.99 |
| V-NET LONG DIST. | 11.30 |

---

[2]Even though the Agreement purports to pertain only to the academic year 1998-1999, both parties presume its continuing applicability to the charges in question, which were incurred during the academic year 1999-2000. The Court adopts the presumption made without dispute by the parties, that the Agreement covers the charges at issue.

3

|                        |            |
|------------------------|-----------:|
| ENG. EQUIP. FEE        |     295.00 |
| LATE PAYMENT FEES (6)  |   1,219.50 |
| TOTAL                  | $16,499.79 |

After applying the prior credit balance, the DEBTOR'S Student Account balance as of June 1, 2000, was $13,916.92. Three payments were then credited totaling $2,900.00 which reduced the balance to $11,016.92. The DEBTOR did not return in the fall. VANDERBILT subsequently sued the DEBTOR in Tennessee State Court and obtained a judgment for $11,491.41.

The DEBTOR filed a Chapter 7 petition on September 22, 2007. On her schedule of unsecured creditors, the DEBTOR listed a debt owed to VANDERBILT for tuition in an unknown amount.[3] The DEBTOR commenced this adversary proceeding to establish that the debt is dischargeable under Section 523(a)(8).[4] In her complaint and in her motion, the DEBTOR alleges that her application for financial aid was denied after she had begun classes at VANDERBILT and that she signed a contract agreeing to pay for the tuition and fees, but that her debt to VANDERBILT is not a student loan excepted from discharge. VANDERBILT contends that the Agreement created a loan.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in bankruptcy by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there

---

[3] The DEBTOR also listed a debt in an unknown amount to the U.S. Department of Education for student loan, books, and tuition; a debt to Sallie Mae in the amount of $2,213 for student loan, books and tuition; and a debt of $15,000 owed to CEFCU for a student loan.

[4] In the Chapter 7 proceeding, the Trustee filed a no asset report and a general discharge was issued to the DEBTOR on January 9, 2008.

4

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Pursuant to Section 523(a)(8), a discharge issued under Section 727 does not discharge an individual debtor from any debt for "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." The purpose underlying this provision is to protect the solvency of the student loan system and to prevent debtors, who often have little earning power in the early years after graduation, from reaping the windfall of a free education. *In re Merchant*, 958 F.2d 738 (6th Cir. 1992). Because Section 523(a)(8) does not specifically define the word "loan," courts have grappled with the issue of whether a debtor's unpaid tuition account falls within that term.[5] *In re Chambers*, 348 F.3d 650 (7th Cir. 2003); *Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308 (3d Cir. 2002); *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82 (2d Cir. 2000).

---

[5] Both parties frame the sole issue as the construction of the term "loan."

5

*Renshaw*, the first appellate consideration of the issue, involved a consolidated appeal of two different debtors and two different colleges. The court, interpreting the term "loan" in accordance with its common law meaning, followed earlier decisions which had adopted the established meaning of "(i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date," noting that the contract must be reached prior to or contemporaneous with the transfer. *Renshaw,* 222 F.3d at 88. Tailoring that definition to educational loans, the court determined that neither college entered into an agreement with its student to either extend credit to the student or to permit the student to attend classes in exchange for the payment of tuition at a future date. Rather, the students "unilaterally decided not to pay tuition when it came due" and the colleges "which then could have forbidden them to attend classes, chose not to do so." *Id.* The court concluded that when the tuition fell due and was not paid, it simply became a past due account and was not thereby transformed into a loan.[6] *Id* at 90. The Second Circuit stated that the substance of the transaction and the parties' intent, not the form of the transaction, was determinative. Its decision was followed by the Third Circuit Court of Appeals in *Mehta*.

In *Chambers,* the debtor attended the University of Illinois at Chicago (UIC), where she incurred tuition and related fees under an open student account. She left UIC with an unpaid account balance of $1,118.77, plus accruing interest, and filed a Chapter 7 case. The

---

[6]Renshaw signed a standard form "Reservation Agreement" with Cazenovia College that lists the charges that Renshaw was required to pay, including a reservation fee, tuition, room and board, and included an obligation to pay a service charge of 19.2% if payments on the student's account were not made by their due dates. Tuition for the fall 1992 semester was due in full by September 1, 1992.

6

Seventh Circuit followed *Mehta* and *Renshaw*, concluding that nonpayment of tuition constitutes a loan within the meaning of the exception to discharge where (1) funds have changed hands, or (2) there is a separate agreement acknowledging the transfer of educational services and delaying the obligation for repayment.  In support of its determination that a debt on an open student account is not within the language of the exception, the court contrasted Section 523(a)(8)'s language with that of Section 523(a)(2)(A), which excepts from discharge any "extension of credit."  Turning to the facts before it and characterizing them as indistinguishable from *Mehta* and *Renshaw*, the court concluded that there was no evidence of an agreement for deferral of the payments between the debtor and the university.  The debtor simply failed to pay the bill for tuition and continued to attend classes with UIC's acquiescence. Offering guidance to educational institutions, the court opined that in instances where a student fails to pay tuition when due, a separate agreement providing for acceptance of the payment at a later date could give rise to a loan which would be accorded the protection of Section 523(a)(8).

Relying on the Student Account Guarantor Agreement, VANDERBILT contends that this case is distinguishable from *Chambers* and the cases upon which it relies.  This Court does not agree.  True, *Chambers* did not involve a written agreement, although it did involve an open student account.  That is not the case, however, of one of the debtors in *Renshaw*.  There, before enrolling in the college, the debtor had signed a "reservation agreement" which was routinely signed by all students, and which did little more than list various fees and obligate the student to pay the tuition on the due date.  Rejecting the

7

college's reliance on the reservation agreement as evidence of a loan, the court found it significant that the agreement did:

> *[N]ot* obligate [the college] to permit a student with unpaid bills to attend classes or to obtain other services from the college. Even if allowing a student to attend classes without prior payment can be characterized as an extension of credit, [the college] never promised to extend such credit to [the debtor], and it certainly did not reach a prior or contemporaneous agreement with [the debtor] on the amount of credit to be extended.

222 F.3d at 89. *See Ray v. Univ. of Tulsa (In re Ray)*, 262 B.R. 544, 551 ("enrollment" card, signed by all students, whereby student promised to pay total amount of fees assessed plus a specified rate of interest on balances over thirty days past due, did not constitute a loan).

Similarly, the university in *Mehta* relied on a handbook given to all students, which provided that by registering for classes, a student becomes obligated to pay for all fees and charges, including tuition, contending that a contract was formed upon the debtor's registration, whereby the debtor agreed to pay a defined sum for specified services. The university contended that the agreement was transformed into a loan when it allowed the debtor to continue in classes without paying the tuition. Not doubting that the debtor knew of his financial obligation to the university, the Third Circuit held that the debtor's awareness was insufficient evidence that a loan was intended by the parties.

In the present case, the Student Account Guarantor Agreement treats tuition, housing, activity and recreational fees and other charges differently from "incidental" charges which occur after the beginning of the semester. Paragraph 2 unequivocally provides that the former category must be paid one week prior to the beginning of the semester. That is, payment is due in full, in advance. It is only incidental charges occurring after the beginning of the semester that are payable on a monthly basis. Based on the

8

billing records for the DEBTOR'S account, only a few charges of insignificant amounts represent "incidental" charges. VANDERBILT asserts that the Court must "read into" the Agreement VANDERBILT'S commitment to provide the educational services and its agreement to accept payment at a later date, but the Agreement provides no such commitment and that assertion is contradicted by the Agreement's reference to unpaid charges and the imposition of a late fee on those charges. VANDERBILT did not agree to defer payment. Rather, as was the case in *Chambers*, *Renshaw* and *Mehta*, when the DEBTOR failed to pay the tuition as agreed, VANDERBILT voluntarily allowed her to complete the semester notwithstanding the absence of an agreement to defer payment of the tuition. On the facts before the Court, the Student Account Guarantor Agreement is not an educational loan subject to Section 523(a)(8), and the DEBTOR'S obligation to VANDERBILT is not nondischargeable on that basis. Accordingly, VANDERBILT'S Motion for Summary Judgment will be denied and the DEBTOR'S Motion will be granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###